UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------X
KVEION ROBINSON,
              Plaintiff,                                  25-cv- 7381

      -against-                                      COMPLAINT AND
                                                          JURY DEMAND

THE CITY OF NEW YORK,
NYPD PO BRIAN SWEENEY (23366)(RET), NYPD
PO BRIAN ALBERDA (12830)(RET),
NYPD LT JAMES BRIONES, NYPD MEMBERS
OF SERVICE DOES #1-10, and NYPD MEMBERS
OF SERVICE SUPERVISOR ROES #1-10,
              Defendants.

-----------------------------------------------X

       Plaintiff Kveion Robinson, by and through his attorney, Wylie Stecklow, PLLC, and for

his Complaint against Defendants, hereby alleges the following conduct of Defendants, and

states the following causes of action based thereon:

          **I.**     **PRELIMINARY STATEMENT**

      1.     Plaintiff brings this action for compensatory damages, punitive damages and

attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights, as such

rights are secured by those statutes and by the Constitution of the United States, and pursuant to

New York City Administrative Code §§ 8-802 and 803(a-c).

      2.     The New York Police Department has a very unfortunate history of making false

statements and failing to discipline officers who have repeatedly committed serious civil rights

violations, including officers who seek to cover up its violence and mistakes and the harm their

conduct has caused New Yorkers and others.

      3.     Plaintiff's claims for deprivation of federal civil rights, denial of constitutional

right to fair trial, and malicious abuse of process accrued on February 7, 2023, when all criminal

proceedings initiated by Defendants against Plaintiff were dismissed. Earlier in December 2022, Plaintiff had been arrested and charged with assault in the second degree, assault in the third degree, criminal obstruction of breathing or blood circulation, and obstructing governmental administration in the second degree. Plaintiff's arrest and the charges subsequently brought against him were prosecuted by Defendants through their intentional and knowing misrepresentation of incriminating but untruthful witness statements, and also through their intentional and knowing withholding of truthful and exculpatory evidence, all concerning an incident on December 7, 2022, in which officers with the NYPD unlawfully entered Plaintiff's apartment, grabbed him without warning, tackled him, and began punching him about the face and body with a closed fist.

4.      Plaintiff's excessive force, failure to intervene, New York City Administrative Code causes of action, and his *Monell* and Fourth Amendment claims, accrued on December 7, 2022, the date on which he was arrested, despite the on-scene officers having personally scene that the police tackled and punched him.

5.      Defendants purposefully, negligently and/or recklessly misrepresented and withheld evidence in order to conceal their own derelictions of duty that had led to the December 7, 2022, attack to occur. As detailed below, camera footage shows that the police officers that tackled and punched Plaintiff intentionally initiated the assault despite no provocation.

6.      Plaintiff seeks herein redress for the constitutional injuries inflicted on him by Defendants under color of law.

## II.     JURISDICTION

7.      This action is brought in this Court pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Eighteenth, and Fourteenth Amendments to the United States Constitution.

Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

8.　　This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over all of Plaintiff's claims pursuant to New York City Administrative Code §§ 8-802 and 803(a-c) because all of those claims derive from the same nucleus of operative facts as Plaintiff's federal claims and are part of the same case or controversy that gives rise to the federal claims and causes of action here.

### III.　　VENUE

9.　　Venue is proper in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because a substantial part of the events giving rise to the claim occurred in this District.

### IV.　　JURY DEMAND

10.　　Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

### V.　　THE PARTIES

11.　　At all times hereinafter mentioned, Plaintiff Kveion Robinson was a resident of New York County, in the City of New York, State of New York.

12.　　At all times hereinafter mentioned, DEFENDANT, the CITY OF NEW YORK, was a municipal corporation duly organized and existing under the laws of the State of New York. The City is authorized by law to maintain a police department, the New York City Police Department ("NYPD"), which is authorized to perform all functions of a police department per the applicable sections of the New York State Criminal Procedure Law.

13.    At all times hereinafter mentioned, Defendant NYPD Officer Brian Sweeney, Badge No. 23366, was a duly sworn police officer with the rank of Police Officer and is being sued in his individual capacity. Officer Sweeney resigned from the NYPD as of November 28, 2023.

14.    At all times hereinafter mentioned, Defendant NYPD Officer Brian Alberda, Badge No. 12830, was a duly sworn police officer with the rank of Police Officer and is being sued in his individual capacity. Officer Alberda resigned from the NYPD as of October 2, 2023.

15.    At all times hereinafter mentioned, Defendant NYPD Lieutenant James Briones, Tax #924981, was a duly sworn police officer with the rank of Police Officer and is being sued in his individual capacity.

16.    At all times hereinafter mentioned, Defendant NYPD Officer Joseph Cosolito, Badge No. 12830, was a duly sworn police officer with the rank of Police Officer and is being sued in his individual capacity.

## VI.    ALLEGATIONS OF FACT

17.    While at home in Manhattan on the morning of December 7, 2022, Plaintiff Kveion Robinson was tackled and punched repeatedly by New York Police Department Officers Brian Sweeney and Brian Alberda.

18.    Prior to this assault, Mr. Robinson was in his apartment at 201 East 24th Street with his girlfriend, Katelyn Rodrigez, and infant child. He suddenly heard a knock on the door.

19.    Mr. Robinson opened his door to find Officers Sweeney and Alberda. He did not know why they arrived.

20.    While Mr. Robinson remained quiet and calm, Officer Sweeney said to him, "What's going on?" and "Let me see your hands."

21.     Officer Sweeney then began to reach across the doorway and tug on Mr. Robinson's shirt. He told him, "Step out here." Officer Sweeney did not present a warrant.

22.     Mr. Robinson replied, "Don't touch me." He kept his arms crossed in front of his chest while looking down to the ground and facing slightly away from Officer Sweeney.

23.     Officer Sweeney nevertheless proceeded to step inside Mr. Robinson's home, grab him by the arm, and immediately tackled him down onto the bed that was just inside the apartment. Officer Alberda followed them into the apartment.







24.    Officer Sweeney then punched Mr. Robinson and Officer Alberda held his arm down against the bed.

25.    The officers ordered Mr. Robinson to "give us your hands" and "relax." All the while, Ms. Rodriguez was screaming and pleading with the officers to stop. Their infant son was also present, while their dog, who was locked inside the crate inside the apartment as well, was barking loudly and constantly.

26.    Amid these other sounds and distractions drowning out the officers' commands and causing confusion, Mr. Robinson attempted to follow their orders. He held out his hand, as they commanded, yet the officers continued to and escalate the situation, yelling at him to "give me your hands"



and by continuing to punch him about his head and body.

27.    One of the officers also placed Mr. Robinson in a hold that was intentional or unintentional a choke hold. 

28.    Officer Sweeney also yelled at Officer Alberda to "get her the fuck out of here," referring to Ms. Rodriguez, causing him further distress and confusion.

29.    Mr. Robinson cried out in pain as the two officers continued to pin him down and assault him, all the while he also did his best to cooperate with the officers. They continued to punch him about his face, head, and ribs.

30.    During this time, Officer Alberda also tased Mr. Robinson one or two times.

31.    The officers rear cuffed Mr. Robinson. Along with other officers who appeared to arrive on the scene, they brought him out of the apartment and to the elevator, where they pushed Mr. Robinson's head against the elevator door. Mr. Robinson continued to cry out in pain. An officer yelled at Mr. Robinson to "stop talking."

32.    As multiple officers were grabbing him from all directions to lead him out of the elevator, Mr. Robinson insisted, "I can walk! I can walk!"

33.     At least five officers nevertheless proceeded to pick up Mr. Robinson and carry him out of the building, holding his legs and arms. He continued to say "Let me walk" and ask the officers "Why





you are pulling so hard?" And the Defendant officers disregarded Mr. Robinson and walked him out like an animal with his arms and legs in the air, no shoes or sneakers on his feet.

34.     The officers placed him inside of a police vehicle and multiple officers began to once again punch Mr. Robinson, causing him to yell, "Don't punch me!"

35.     At this time, Defendant NYPD LIEUTENANT JAMES BRIONES, one of the officers who arrived on the scene, placed his taser against Mr. Robinson's neck for about 20 seconds.

36.     Later in the day on December 7, 2022, Police Officer Joseph Cosolito filed a criminal complaint against Mr. Robinson with all facts and information informed by Defendants SWEENEY and ALBERDA, charging Mr. Robinson with six misdemeanors.

37.     In the complaint, the NYPD lied and submitted false information to the District Attorney.  The complaint said that Officer Cosolito, as informed by Defendant SWEENEY, "observed the defendant kick him and strike him with his hands about Officer Sweeney's hand and body, causing Officer Sweeney a broken hand."  This was false.

38.     Video evidence directly contradicts this statement. It shows that Officer Sweeney tackled Mr. Robinson as he did his best to comply with Officer Sweeney's orders.

39.     The complaint also falsely stated that Mr. Robinson used "both of his hands to apply pressure to [Officer Sweeney's] throat, causing pain and redness to his throat."  This was false.

40.     Video evidence does not show that Mr. Robinson put his hands on Officer Sweeney's throat.

41.     The complaint further said that Officer Cosolito, as informed by Officer Alberda observed "[Mr. Robinson] kick him and strike him with his hands about Officer Alberda's hand and body, causing a laceration to Officer Alberda's hand and substantial pain."  This was false.

42.     Video evidence directly contradicts this statement. It shows that Officer Sweeney tackled Mr. Robinson and that he, Officer Alberda, and other officers forcefully removed Mr. Robinson from his apartment and building.

43.     On February 10, 2023, after numerous appearances in criminal court, all of the criminal charges, and the related criminal proceedings against Mr. Robinson were dismissed.

44.     As a result of the events that transpired, Mr. Robinson was barred from the housing where he had lived with his fiancé and child.  He was no longer permitted inside of New York City public housing buildings, where he had been residing. When he tried to enter a building, Mr. Robinson was told that the police would be called for trespassing. This caused Mr.

Robinson to live in his car for a number of months while his child and fiancé remained in the housing.

CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF
**DEPRIVATION OF FEDERAL CIVIL RIGHTS**
***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the United States Constitution***

45.     The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

46.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a violation of rights that are clearly established by the Constitution of the United States.

47.     All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States, and in violation of 42 U.S.C. § 1983.

48.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

49.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

50.     The Defendant POLICE OFFICERS, and Defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally-

violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

51.    As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer physical injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, damage to his reputation, and loss of his home.

52.    As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

SECOND CLAIM FOR RELIEF
**Excessive Force**
***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

53.    The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

54.    Defendants' use of force against Plaintiff was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that Defendants found themselves in.

55.    The use of force against Plaintiff was in contravention of, or inconsistent with, related, written NYPD policies and/or training.

56.    Defendants used force that they knew, or should have known, would negatively impact Plaintiff, and/or cause lasting pain, suffering, and/or injury without making individualized or otherwise appropriate determinations about whether these uses of force were necessary, justified, or reasonable under these circumstances.

57.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering,

psychological and/or emotional injury, and/or humiliation caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

58.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

THIRD CLAIM FOR RELIEF
**DEPRIVATION OF FAIR TRIAL**
*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the*
*Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution*

59.     The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

60.     Defendants fabricated evidence of a material nature, likely to influence a jury's decision, intentionally forwarded that evidence to prosecutors, as a result of which Plaintiff suffered liberty deprivations and other injuries.

61.     Defendant Officer Sweeney knowingly and intentionally transmitted false information to the New York County District Attorney by informing Officer Cosolito, the author of the criminal complaint against Plaintiff Robinson, that Plaintiff Robinson "observed the defendant kick him and strike him with his hands about Officer Sweeney's hand and body, causing Officer Sweeney a broken hand."

62.     This statement was untrue, was communicated to a prosecutor, and was likely to influence the decision of any jury weighing the evidence presented in a prosecution of Plaintiff.

63.     Defendant Officer Sweeney also knowingly and intentionally transmitted false information to the New York County District Attorney by informing Officer Cosolito, the author of the criminal complaint against Plaintiff Robinson, that Plaintiff Robinson used "both of his hands to apply pressure to [Officer Sweeney's] throat, causing pain and redness to his throat."

64.     This statement was untrue, was communicated to a prosecutor, and was likely to influence the decision of any jury weighing the evidence presented in a prosecution of Plaintiff.

65.     Defendant Officer Alberda knowingly and intentionally transmitted false information to the New York County District Attorney by informing Officer Cosolito, the author of the criminal complaint against Mr. Robinson, that he observed Plaintiff Robinson "kick him and strike him with his hands about Officer Alberda's hand and body, causing a laceration to Officer Alberda's hand and substantial pain."

66.     This statement was untrue, was communicated to a prosecutor, and was likely to influence the decision of any jury weighing the evidence presented in a prosecution of Plaintiff.

67.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

68.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

<u>FOURTH CLAIM FOR RELIEF</u>
**FAILURE TO INTERVENE**
*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution*

69.     The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

70.     Each Defendant who was present when Defendant NYPD Officer Sweeney violated Plaintiff's constitutional rights had an affirmative duty to intervene on behalf of Plaintiff, whose constitutional rights were being violated in their presence by other officers.

71.     Specifically, each Defendant who was present when NYPD Officer Sweeney arrested and/or caused Plaintiff to be arrested without probable cause or a warrant had an affirmative duty, the ability and opportunity to intervene on behalf of Plaintiff and failed to intervene to prevent the unlawful arrest.

72.     Specifically, each Defendant who was present at the location of the assault in Mr. Robinson's apartment had observed that Mr. Robinson did not use both of his hands to apply pressure to Officer Sweeney's throat.

73.     Specifically, each Defendant who was present at the location of the assault in Mr. Robinson's apartment had observed that Mr. Robinson did not kick and strike Officer Sweeney.

74.     Specifically, each Defendant who was present at the location of the assault in Mr. Robinson's apartment had observed that Mr. Robinson did not kick and strike Officer Alberda.

75.     Specifically, each Defendant who was present during the time Mr. Robinson was being held was aware the arrest was unconstitutional and had an opportunity to intervene to avoid the arrest.

76.     As a result of the foregoing, Plaintiff suffered serious injury, his liberty was restricted, he was put in fear of his safety, he was humiliated, and he lost his home.

77.     As a direct and proximate result of such acts, Defendants, individually and collectively, deprived Plaintiff of his rights under the Constitutions and laws of the United States and of the State of New York.

<u>FIFTH CLAIM FOR RELIEF</u>
**FAILURE TO INTERVENE**
***Pursuant to New York City Administrative Code § 8-803 for Defendants' Violations of Plaintiff's Right of Security***

78.     The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

79.     The acts of all Defendant Officers constituted conduct under color of the laws of the State of New York, under color of the laws, rules, and regulations of the City of New York, and under color of the customs and usages of the City of New York and of the New York City Police Department.

80.     The failure of Defendant Officers to intervene, in violation of N.Y.C. Admin. Code § 8-803, caused Plaintiff to be deprived of the right, as it is granted and guaranteed to him by N.Y.C. Admin. Code §§ 8-802, to be secure in his person against the use of excessive force.

81.     The failure of the Defendant Officers to intervene while other Defendant Officers unlawfully arrested the Plaintiff on East Second Street caused Plaintiff to be deprived of the right to be secure against such illegal acts as it is granted and guaranteed to him by N.Y.C. Admin. Code §§ 8-802.

82.     The failure of the Defendant Officers to intervene while other Defendant Officers continued to confine and seize Plaintiff at the police precinct, after they had actual knowledge that he was innocent in fact of wrongdoing and in violation of N.Y.C. Admin. Code §§ 8-802, caused Plaintiff to be deprived of the right to be secure against such illegal acts as it is granted and guaranteed to him by N.Y.C. Admin. Code §§ 8-802.

83.     As a result of the foregoing, Plaintiff Kveion Robinson was deprived of his liberty, was denied fundamental constitutional rights, was seriously injured physically, was publicly embarrassed and humiliated, was incarcerated, was caused to feel unwell during the arrest proceeding, and had his personal reputation destroyed.

84.     As a result of the above conduct, the City of New York is liable, under New York City Administrative Code § 8-803(b) and under the doctrine of respondeat superior, for the

conduct of the Individual Defendants, and for any damages the Individual Defendants caused by
and through their conduct.

<u>SIXTH CLAIM FOR RELIEF</u>
**DEPRIVATION OF RIGHTS**
*Pursuant to New York City Administrative Code § 8-802 for Defendants' Violations of
Plaintiff's Right of Security*

85.     The Plaintiff repeats and realleges the foregoing paragraphs as if the same were
fully set forth at length herein.

86.     The acts of Defendant Officers constituted conduct under color of the laws, rules,
and regulations of the City of New York, and under color of the customs and usages of the City
of New York and of the New York City Police Department.

87.     The acts of Defendant Officers caused Plaintiff to be deprived of the right, as it is
granted and guaranteed to him by N.Y.C. Admin. Code §§ 8-802, to be secure in his person
against the use of excessive force.

88.     The Defendant Officers, while in uniform, unlawfully seized, searched and
arrested the Plaintiff on East 24th Street in violation of N.Y.C. Admin. Code §§ 8-802.

89.     The Defendant Officers, while in uniform, continued to confine and seize Plaintiff
at the police precinct after they had actual knowledge that he was innocent of wrongdoing, in
violation of N.Y.C. Admin. Code §§ 8-802.

90.     As a result of the foregoing, Plaintiff Robinson was deprived of his liberty, was
denied fundamental constitutional rights, was seriously injured physically, was publicly
embarrassed and humiliated, was incarcerated, was caused to feel unwell during the arrest
proceeding, and had his personal reputation destroyed.

91.     As a result of the above conduct, the City of New York is liable, under New York
City Administrative Code § 8-803(b) and under the doctrine of respondeat superior, for the

conduct of the Individual Defendants, and for any damages the Individual Defendants caused by and through their conduct.

SEVENTH CLAIM FOR RELIEF<br>
<strong>FALSE ENTRY</strong><br>
<em><strong>Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth Amendment to the United States Constitution</strong></em>

92.    The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

93.    Defendants' false entry into Plaintiff's home was unjustified and objectionably unreasonable, taking into consideration the facts and circumstances that Defendants found themselves in.

94.    The false entry into Plaintiff's home was in contravention of, or inconsistent with, related, written NYPD policies and/or training.

95.    Asa. Result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

96.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

EIGHTH CLAIM FOR RELIEF<br>
<strong>MUNICIPAL LIABILITY</strong><br>
<em><strong>Pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978) against Defendant City of New York.</strong></em>

97.    The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

98.     Defendants Sweeney, Alberda, Briones, Roe, and John Does while acting under color of state, law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

99.     The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York included, but were not limited to, (i) giving false information in criminal complaints, (ii) failure to discipline officers and (iii) failure to properly screen NYPD candidates by utilizing unlicensed psychologists to perform assessments.   These policies each resulted in the violation of Plaintiff Robinson's constitutional rights as described herein. As a result of these policies, Defendant City of New York has tacitly authorized, ratified, and been deliberately indifferent to, the acts and conduct complained of herein.

100.    Evidence of the existence of an improper custom of giving false information about civilian conduct to avoid responsibility exists, yet the ones that are reported are the incidents where the officers are caught.

101.    For example, a 2018 report by *The New York Times* found that cases investigated by the Civilian Complaint Review Board "often… involve officers who deny throwing a punch or who downplay the force used during arrest – only to have their accounts undermined by video recordings." *Promotions, Not Punishments, for Officers Accused of Lying,*
*https://www.nytimes.com/2018/03/19/nyregion/new-york-police-perjury-promotions.html.*

102.    In 2019, an NYPD officer lied when he told a grand jury that a defendant drove after him and would have hit him had he not jumped out of the way. The account was contradicted by surveillance video, which showed the defendant driving away from the officer. *Video completely undercuts former NYPD officer about alleged assault,*

https://www.washingtonpost.com/opinions/2019/11/20/video-completely-undercuts-former-nypd-
officer-about-alleged-assault/.

103.    In 2022, video footage revealed that the NYPD's claims that a sixteen-year-old

boy had refused commands, hidden his hands, and fired a weapon at a police officer were false.

Instead, the boy had complied with their commands, and the weapon had gone off during an

illegal search. A Bronx Criminal Court judge called the officer's testimony "incredible and

unreliable." *Shielded from Accountability: How NYPD Officers Get Away with Lying to the*

*CCRB,* https://www.latinojustice.org/sites/default/files/2023-08/CCRB%20Report_v4_4-
9%20%2811%29.pdf.

104.    An NYPD officer allegedly lied about a police car accident that occurred in

December 2023 and injured a motorcyclist, who was arrested and charged with reckless

engagement and criminal mischief. The officer, who was in the passenger seat of the police cat at

the time of the accident, filed a collision report stating the motorcyclist drove into the police car,

but video surveillance showed that the police car turned into the motorcyclist. The officer was

charged for lying about the incident. *NYPD Officer Charged in Two Indictments: For Assaulting*

*a Suspect, and For Lying About Patrol Car Striking Motorcyclist,*

https://www.bronxda.nyc.gov/downloads/pdf/pr/2024/78-2024%20NYPD%20Kenny-Victoria-
indicted.pdf

105.    A custom of the NYPD's failure to appropriately discipline NYPD officers and

officials' prior misconduct is characterized by:

106.    A custom of the NYPD's failure to appropriately discipline NYPD officers and

officials' prior misconduct is characterized by:

      a.    failing to discipline NYPD officers and officials who committed civil rights
         violations;

    b.   ordering and encouraging NYPD officers and officials to cover up civil rights violations committed by fellow officers and subordinates;

    c.   disciplining and criticizing NYPD officers and officials who refused to cover up civil rights violations committed by fellow officers and subordinates;

    d.   failing to train NYPD officers and officials on the circumstances in which discipline for civil rights violations must or may be imposed;

    e.   vesting NYPD officers and officials with too much discretion in deciding when to discipline fellow officers and subordinates for civil rights violations;

    f.   failing to investigate circumstances in which NYPD officers and officials committed civil rights violations or covered up civil rights violations committed by fellow officers and subordinates;

    g.   assisting NYPD officers and officials who committed civil rights violations in covering up wrongdoing; and

    h.   rewarding NYPD officers and officials who cover up civil rights violations committed by fellow officers and subordinates (collectively, "**Discipline Policies**").

107.    There is robust evidence of Defendants' prior misconduct and/or failure to appropriately discipline Defendants' prior misconduct, which otherwise may have resulted in the avoidance of the denial of Plaintiff Robinson's constitutional and civil rights.

108.    For example, in October 2023, Officer Sweeney was accused of "Abuse of Authority: threat of Arrest" and "Force: Physical Force." The complaint was later withdrawn. *https://www.50-a.org/complaint/202309921*

109.    In May 2023, Officer Sweeney was accused of "Force: Physical Force." The CCRB found his alleged conduct to fall within NYPD guidelines. *https://www.50-a.org/complaint/202305363*

110.    In July 2022, Officer Sweeney was accused of "Abuse of Authority: Vehicle Stop." The CCRB found his alleged conduct to fall within NYPD guidelines. *https://www.50-a.org/complaint/202204877*

111.    In July 2022, Officer Sweeney was accused of "Abuse of Authority: Entry of Premises" and "Abuse of Authority: Forcible Removal to Hospital." The CCRB found his alleged conduct to fall within NYPD guidelines. *https://www.50-a.org/complaint/202205061*

112.    In January 2023, Officer Briones was accused of "Abuse of Authority: Refusal to process civilian complaint." The CCRB investigated the alleged conduct but could not determine that the conduct occurred and that it broke the rules. *https://www.50-a.org/complaint/202300947*

113.    In April 2022, Officer Briones was accused of "Force: Physical Force" and "Abuse of Authority: Forcible Removal to Hospital." The CCRB found his alleged conduct to fall within NYPD guidelines. *https://www.50-a.org/complaint/202202684*

114.    In May 2005, Officer Briones was accused of "Abuse of Authority: Threat of arrest." The complaint was withdrawn. *https://www.50-a.org/complaint/200505138*

115.    Defendant City of New York has been deliberately indifferent to the need to prevent its officers from giving false statements and has failed to appropriately discipline those who have been found to have done so.

116.    Defendant City of New York knows to a moral certainty that its officers will have to give statements to prosecutors about civilian conduct during arrests.

117.    Giving accurate statements to prosecutors is of the utmost importance to the imposition of justice.

118.    Accurately and fairly reporting the cause of accidents with civilians is important for the fair administration of justice and for fostering the concept of community policing and community-police relations.

119.    An independent review of NYPD psychological assessment unit data focused on the credentials of individuals conducting NYPD evaluations of potential recruits and officers in

the filed after shootings and traumatic events and found that 55 out of 74 individuals doing these psychological assessments over  from 2013-2025[1] did not have a license or permit to practice psychology.

120.    In furtherance of the Defendant CITY's policy to allow individuals with psychological issues to join the NYPD, in July 2025, Defendant CITY admitted that it allowed more than eighty (80) officers who failed psychological exams to be hired by the NYPD by allowing a commander in charge to override the results.

121.    The individual who overrode these psychological failed exams indicated that "[h]e had the authority under previous administrations to make those decisions."[2]  This indicates that this practice preceded his time as the commanding officer of the candidate assessment division.

122.    Defendant ALBERDA's NYPD service began between 2013 and 2025, in November 2020.

123.    Defendant SWEENEY's NYPD service began between 2013 and 2025, in November 2020.

124.    The foregoing customs, usages, practices, procedures and rules of Defendant City of New York constituted deliberate indifference to the safety, well-being and constitutional rights of Plaintiff Robinson.

---

[1] https://docs.google.com/spreadsheets/d/1nXdfTquq5hzx1rebErxKjlL7TErahQWLnA8Peb21A-A/edit?gid=0#gid=0

[2] https://www.nytimes.com/2025/05/21/nyregion/nypd-inspector-transferred-psychological-test.html

125.    The foregoing customs, policies, usages, practices, and protocols of Defendants City of New York and its officers were the direct and proximate cause of the constitutional violations suffered by Plaintiff Robinson as alleged herein.

126.    The foregoing customs, policies, usages, practices, procedures and rules of Defendant City of New York were the moving force behind constitutional violations suffered by Plaintiff Robinson as alleged herein.

127.    As a result of the foregoing customs, policies, usages, practices, and protocols of Defendant City of New York, Plaintiff Robinson suffered a violation of his constitutional rights, including Fourth Amendment violations, and was subjected to deprivation of federal civil rights, excessive force, failure to intervene, and more.

128.    Defendants SWEENEY, ALBERDA, BRIONES, Richard Roe, and John Does, collectively and individually, while acting under color of state law, were directly and actively involved in violating Plaintiff Robinson's constitutional rights.

129.    As a result of the foregoing, Plaintiff Robinson is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Kveion Robinson demands judgment against the Defendants on each cause of action in amounts to be determined upon the trial of this action, inclusive of punitive damages and attorneys' fees, and inclusive of costs and disbursements of this action and inclusive of statutory interest on such damages, costs and fees, and such other relief as is appropriate under the law, and that the Plaintiff recover the cost of the suit herein, including

reasonable attorney's fees pursuant to 42 U.S.C. § 1983, 1988, and including reasonable

attorneys' fees and court costs pursuant to N.Y.C. Admin. Code §§ 8 – 805.


Dated: New York, New York
September 5, 2025


Yours, etc.,

WYLIE STECKLOW PLLC
Attorney for Plaintiff Kveion Robinson
Carnegie Hall Tower
152 W. 57th Street, 8th Floor
New York, NY 10019
(212) 566 8000
ECF@WylieLAW.com